UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TIMOTHY CROMWELL,

    Plaintiff,

v.                                                      CASE NO. 8:13-CV-846-T-27MAP

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action for review of the administrative denial of disability insurance benefits (DIB) and period of disability benefits. *See* 42 U.S.C. § 405(g). Plaintiff argues that the decision of the Administrative Law Judge (ALJ) is not supported by substantial evidence because the ALJ did not properly evaluate his credibility and improperly discounted the opinions of his treating physicians. After considering the parties' briefs (docs. 11, 15) and the administrative record, I conclude that the Commissioner's decision is in accordance with the law and supported by substantial evidence. I therefore recommend the Commissioner's decision be affirmed.

    *A.*    *Background*

Plaintiff Timothy Cromwell was born on October 4, 1963, and has a high school education. (R. 27) He has past work experience as a lawn care worker, a truck driver, and an excavator operator. (*Id*.) Plaintiff alleges disability commencing January 29, 2009, due to hypothyroidism, herniated disc, lumbar spine impairment, spinal stenosis, depression, hypertensive cardiovascular disease, and

hypertension.[1]  (R. 52, 161)  After a hearing, the ALJ found Plaintiff has the severe impairments of a disorder of the spine and a thyroid disorder. (R. 21)  Aided by the testimony of a vocational expert (VE), the ALJ determined that Plaintiff is not disabled as he has the residual functional capacity (RFC) to perform light work except that he "he is only able to lift or carry up to 10 pounds occasionally and up to five pounds frequently; he would need to be able to alternate between sitting and standing every 45 minutes for two to three minutes, while continuing to work; he can never climb ladders, ropes, and scaffolds; he can occasionally stoop and frequently crouch; and he must avoid concentrated exposure to hazardous machinery and heights." (R. 23)  The ALJ determined that, with this RFC, Plaintiff could not perform his past relevant work but could work as a cashier, assembler/packer, and order taker. (R. 28)  The Appeals Council denied review.  Plaintiff, who has exhausted his administrative remedies, filed this action.

  B.  *Standard of Review*

To be entitled to DIB, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *See* 42 U.S.C. § 423(d)(1)(A).  A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process,

---

[1] At the hearing, Plaintiff amended his onset date from January 6, 2010 (as stated on his original benefits application) to January 29, 2009, the date of his first appointment with neurologist Dr. Guerin. (R. 52-53) The ALJ's decision incorrectly notes an onset date of January 6, 2010. (R. 19)

promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has

been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

    C.    Discussion

        1.    *ALJ's consideration of Plaintiff's treating physicians' opinion*

Plaintiff argues that the ALJ's decision to assign little weight to Drs. Levenberg and DiDio's opinions is unsupported by substantial evidence. Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (*quoting* 20 C.F.R. § 404.1527(a)(2)). A court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted). With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate the reasons for doing so." *Winschel*, 631 F.3d at 1179 (*quoting Phillips v. Barnhart*, 357 at 1240 n.8). Additionally, the ALJ must state the weight given to different medical opinions and the reasons therefor. *Id*.; *see also* 20 C.F.R. § 404.1574(a)(1-2). Otherwise, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Specifically, the opinions of examining physicians are given more weight than non-examining

4

physicians, treating more than non-treating physicians, and specialists more than non-specialists physicians. 20 C.F.R. § 404.1574(d)(1),(2),(5).

### a. Dr. Levenberg

Although Dr. Levenberg is a family practice physician who first treated Plaintiff in 2005, his available treatment records begin with an August 2008 treatment note. (R. 271) At that time, Plaintiff reported fatigue, and Dr. Levenberg diagnosed hypothyroidism. (*Id*.) The treatment record makes no mention of Plaintiff's back pain. It does not appear Dr. Levenberg examined Plaintiff's back, but he prescribed Hydrocodone, presumably for pain. (*Id*.) At Plaintiff's next visit, in October 2008, Plaintiff again reported fatigue but made no mention of back pain. (R. 269) A handwritten note dated a couple of weeks later indicates that Plaintiff called Dr. Levenberg's office with complaints of back pain. (R. 270) Dr. Levenberg refilled Plaintiff's Hydrocodone. (*Id*.)

Dr. Levenberg saw Plaintiff again in October 29, 2009, the day after Plaintiff had checked himself into a local emergency room for back pain. (R. 281-82, 345) At that point, Dr. Levenberg examined Plaintiff's back, made note of his 2004 lumbar disc surgery, and observed Plaintiff had difficulty standing from a sitting position and an ataxic gait. (R. 281) The doctor also summarized the result of an MRI from February 2009, which had been ordered by Plaintiff's treating neurologist Dr. Guerin. (*Id*.) This MRI confirmed Plaintiff had a large herniated disc on the right at L5 S1. (R. 278) Dr. Levenberg refilled Plaintiff's prescriptions but otherwise did not note any functional limitations. (R. 281) In fact, the doctor reported that Plaintiff "has been trying to work part-time in a lawn business." (*Id*.) This is consistent with the emergency room physician's notes of the day before, which state that Plaintiff "works in the lawn service." (R. 345) Dr. Levenberg also indicated that Dr. Guerin advised Plaintiff to have surgery, but Plaintiff did not have enough money for the

procedure. (R. 281)

In a December 2009 letter, Dr. Levenberg opined that Plaintiff was unable to work and that treatment with oral medications was failing to alleviate his pain. (R. 276) The next record from Dr. Levenberg is a February 2011 Multiple Impairment Questionnaire completed at Plaintiff's counsel's request. (R. 314-21) Based on his treatment history with Plaintiff and the 2009 MRI, Dr. Levenberg diagnosed a herniated disc, hypothyroidism, and diabetes and gave Plaintiff a "fair" prognosis. (*Id*.) The doctor reported that Plaintiff had daily back pain that would prevent him from sitting for more than one hour in an eight hour day. (R. 316) He opined Plaintiff could stand and/or walk for only one hour in an eight hour day, could do no pushing, pulling, kneeling, bending, or stooping, and would need to get up to move around every half hour. (*Id*.) His opinion included restrictions on Plaintiff's ability to use his upper extremities to manipulate and reach objects. (R. 318) Additionally, Plaintiff would need frequent, unscheduled breaks of 15 minutes each. (R. 319)

The ALJ considered Dr. Levenberg's opinions but assigned them only limited weight, concluding they are "more restrictive than the evidence of record suggests." (R. 26) Specifically, the ALJ found that Dr. Levenberg's impairment questionnaire included limitations that were not supported by the physician's own treatment notes, and the physician did not otherwise indicate on which clinical findings he was relying. (*Id*.) Instead, the ALJ gave great weight to both the opinions of Plaintiff's treating pain physician, Dr. Mozzetti, and a state medical consultant. Both of these sources opined Plaintiff suffered from fewer restriction than those recognized by Dr. Levenberg.

Dr. Mozzetti treated Plaintiff's pain over eight visits from November 2010 through April 2011. (R. 322-46) Plaintiff initially reported a pain level of 10 out of 10. (R. 338) He was already taking Xanax, Lortab, Soma, Lovoxyl, and Oxycodone when he started treatment with Dr. Mozzetti.

6

(*Id.*)  By December 2010, Plaintiff's pain was down to a 5 out of 10. (R. 334)  Dr. Mozzetti continued Plaintiff on his medication regime (with medications added and discontinued here and there throughout his treatment) and prescribed physical therapy. (R. 322-46)  But by January 2011, Plaintiff was back in the emergency with reports of back pain. (R. 331-33)  What is interesting is that he reported to the emergency room physician that he was only taking over-the-counter medications for his pain and relayed that he "makes his living doing landscaping services." (R. 331)  He was "sent home on prescription pain meds" with a pain level of 3 out of 10, and the attending physician noted: "This is not a chronic back pain clinic, it is an emergency department and the patient is not doing himself any favors by getting primary care for this chronic condition to the emergency care center." (*Id.*)

Two days later, Plaintiff treated with Dr. Mozzetti but made no mention of his emergency room visit. (R. 330) Dr. Mozzetti prescribed him Xanax and Oxycodone and ordered Plaintiff to follow up with him in two weeks. (*Id.*) Plaintiff continued regular treatment with Dr. Mozzetti, and his pain was never higher than a 5 on a scale of 10. (R.322-29)  In February 2011, the same month Dr. Levenberg filled out the impairment questionnaire noting Plaintiff's extreme functional limitations, Dr. Mozzetti opined Plaintiff should "wear a high quality back brace while working, 10 lb lifting restriction frequently (using both hands together), [a]void bending at the waist . . . and 20 lb lifting restriction occasionally (using both hands together)." (R. 323)

It is the function of the ALJ to weigh conflicting evidence and to resolve these types of disagreements among the physicians. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). Here, faced with conflicting restrictions offered by two physicians, the ALJ placed more weight on Dr. Mozzetti's opinion.  Although Plaintiff clearly suffers from chronic back pain, substantial

evidence supports the ALJ's decision: Dr. Mozzetti treated Plaintiff more regularly, he treated Plaintiff specifically for back pain, Dr. Mozzetti's opinions about the intensity of Plaintiff's pain are consistent with Dr. Levenberg's treatment notes (with the exception of the latter's impairment questionnaire), and a state agency consultant opined Plaintiff could perform light work provided he adhere to lifting limitations similar to those recognized by Dr. Mozzetti. (R. 306-13) Also informing the ALJ's decision was Plaintiff's admitted reluctance to proceed with a surgery that promised some relief to his pain (R. 26, and discussed in the next section), spotty evidence that Plaintiff alluded to performing manual labor (landscaping) during the relevant period, and a record of Plaintiff's drug-seeking behavior. (R. 24)  Although none of these factors, on its own, constitutes good cause to reject Dr. Levenberg's opinions, together they add up to substantial evidence.

       b.  Dr. DiDio

Next, Plaintiff argues the ALJ's decision to assign little weight to Dr. DiDio's opinion is not supported by substantial evidence.  Dr. DiDio examined Plaintiff once, in September 2011. (R. 357-61) In a thorough report following this exam, he recounted Plaintiff's struggles with back pain, from his on-the-job injury in 2003, to his back surgery in 2004, to his 2009 MRI and his later treatment with Dr. Mozzetti. (*Id*.)  Dr. DiDio concluded Plaintiff suffers from severe lumbago, lumbar spondylosis with recurrent disc herniation, lunbosacral radiculopathy, and failed lumbar surgery syndrome; all these impairments result in constant low back pain, "typically 5-6/10 on a pain scale." (R. 358, 360) According to Dr. DiDio, Plaintiff's "condition is permanent, disabling, and chronic. Unfortunately, I expect he will continue to worsen as the lumbar spine develops more degenerative spondylitic changes over time. . . . At this time I do not believe he is able to engage in full-time, gainful employment." (R. 361) Dr. DiDio also completed a spinal impairment questionnaire based

8

on the same examination of Plaintiff. His prognosis was one of permanent disability. (R. 367-73)

The ALJ gave this opinion little weight because (1) it states a legal conclusion on a issue reserved for the Commissioner (whether Plaintiff is disabled); (2) it is inconsistent with other treatment records (as explained above); and (3) it is based on an exam conducted six months after the claimant's date of last insured. (R. 26-27) Substantial evidence supports this. First, Plaintiff must prove that his disability existed during the time he was insured, within the meaning of the special status requirements under the Act. *Demandre v. Califano,* 591 F.2d 1088, 1090 (5th Cir. 1979).[2] Dr. DiDio's single September 2011 treatment note does not relate to the time period between Plaintiff's alleged onset date (January 29, 2009) and his date of last insured (March 31, 2011). As this is a bright line, however, the ALJ should consider the totality of the evidence to the extent it "bears upon the severity of the claimant's condition before the expiration of his or her insured status." *Ward v. Astrue*, No. 3:00-cv-1137-J-HTS, 2008 WL 1994978, at *4 (M.D. Fla. May 8, 2008). The ALJ did so and, based on the treatment records from the insured period, properly discounted Dr. DiDio's opinion.

Also, "[a]s a general rule, however, the opinion of a one-time examiner is not entitled to great weight." *Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 842 (11th Cir. 2013). The ALJ expressly considered Dr. DiDio's opinion but properly discounted it. To be sure, the Commissioner is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985). Such is the case here. As explained in the previous section, the medical evidence as a whole supports Dr. Mozzetti's opinions, which are at odds with

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions the former Fifth Circuit rendered prior to October 1, 1981.

Dr. DiDio's. Finally, to the extent Dr. DiDio concluded that, based on Plaintiff's limitations, Plaintiff could no longer work, this is a legal conclusion reserved for the Commissioner. 20 C.F.R. § 404.1527(d). For these reasons, the ALJ's decision to discount Dr. DiDio's opinion is proper.

*2. ALJ's consideration of Plaintiff's credibility*

Next, Plaintiff argues that the ALJ erred by not enumerating specific reasons for discrediting Plaintiff's complaints of disabling pain and instead relying on boilerplate language. The ALJ found:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(R. 24) Although this is standard language, it directly addresses the Eleventh Circuit's pain standard; it is not improper on its face if supported by substantial evidence. *See Danan v. Colvin*, 8:12-cv-7-T-27TGW, 2013 WL 1694856, at *3 (M.D. Fla. Mar. 15, 2013).

Credibility determinations are the province of the ALJ. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). When evaluating the intensity and persistence of a claimant's symptoms, including pain, the ALJ considers all of the available evidence, including the claimant's medical history, medical signs, and laboratory findings and statements about how the claimant's symptoms affect her. 20 C.F.R. § 404.1529(a). In making a determination, the Commissioner must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence. *See id.* "Objective evidence" means medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. *See* 20 C.F.R. § 404.1528. "Other evidence," as that term is used here, includes evidence from medical sources, medical history, and statements about treatment the claimant has

received. *See* 20 C.F.R. § 404.1512(b)(2).

The Eleventh Circuit pain standard incorporates this scheme by requiring evidence of an underlying medical condition and either (a) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (b) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). In certain instances, pain alone can be disabling even if unsupported by objective evidence. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Id.* at 1562.

The ALJ properly considered Plaintiff's subjective complaints of pain as required by the Eleventh Circuit. The ALJ specifically considered Plaintiff's testimony as follows:

> . . . [T[he claimant alleged he is unable to work because he cannot sit, bend, stand, or walk for any length of time. He reported illnesses including hypothyroidism, herniated disc, lumbar spine impairment, spinal stenosis, depression, hyperintensive cardiovascular disease, and hypertension. The claimant alleged he has pain in his lower back, hips, and bilateral legs down to his ankle on the right. He indicated the pain is intermittent, depending on his activities. The claimant is able to care for his personal hygiene and grooming. He is also able to prepare light meals and do light housework and laundry. He is able to drive and to go shopping. He testified that he is generally able to complete his activities of daily living, but needs help when he gets bad muscle spasms. He testified that he is able to walk for 30 to 40 minutes, stand for 30 to 40 minutes, and sit for 45 minutes to one hour if he is able to shift positions.

(R. 24) To account for this, the ALJ restricted Plaintiff to a limited range of light work, which incorporates some of these limitations. *See* 20 C.F.R. § 404.1567(b). Then, in discounting Plaintiff's allegations of completely disabling pain, the ALJ reviewed the medical evidence, specifically giving great weight to the opinion of treating physician Dr. Mozzetti, as discussed above.

11

Dr. Mozzetti did not opine that Plaintiff was unable to perform work at the light level.

Plaintiff argues that the ALJ improperly considered Plaintiff's decision to forego surgery in discounting his credibility. According to Plaintiff, he cannot afford the surgery. Plaintiff correctly points out that, in the Eleventh Circuit, inability to afford medical treatment can constitute good cause for noncompliance with a course of treatment. *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988). If one's disability can be cured by treatment or compliance, yet such treatment is not financially available, the condition is disabling in fact and continues to be disabling in law. *Id*. at 1213. Here, however, the ALJ asked Plaintiff if, finances aside, he would go through with the recommended surgery. Plaintiff testified, "I'm kinda scared to go through another surgery again, because sometimes I hear it can get worse." (R. 69) The ALJ considered this reluctance as follows:

> The claimant's credibility as to the severity and disabling nature of his pain is somewhat diminished by his unwillingness to consider a procedure that could alleviate or diminish his pain. Further more, although Dr. Mozzetti ordered physical therapy, the claimant denied having any therapy since 2009. He also denied having any steroid injections or other types of treatment, and testified that he only does stretches in his mother's pool.

(R. 26) Consequently, the ALJ's credibility determination is not "inextricably tied to the finding of [Plaintiff's] noncompliance" with the recommended back surgery. *Dawkins*, 848 F.2d at 1214. In fact, she also considered his failure to comply with more cost-effective treatments and the medical evidence that Plaintiff's pain is not disabling and is generally on a level of 5 out of 10. Finally, as the ALJ emphasized, at one point in 2011, Plaintiff was simultaneously receiving prescription pain medications from three sources: Drs. Mozzetti and Levenberg and an emergency room physician. The ALJ properly considered this drug-seeking behavior in discounting his credibility. *See Douglas v. Comm'r of Soc. Sec.*, 486 F. App'x 72, 75 (11th Cir. 2012). For these reasons, the ALJ's

credibility determination is supported by substantial evidence.

    D.    *Conclusion*

For the reasons stated, it is hereby

RECOMMENDED:

1. That the Plaintiff's complaint be dismissed and the Commissioner's decision be affirmed.

2. That the Clerk is directed to enter judgment for the Commissioner.

IT IS SO REPORTED in Tampa, Florida on July 14, 2014.


_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE


**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attaching the factual findings on appeal. 28 U.S.C. § 636(b)(1).