UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TIMOTHY CROMWELL,

    Plaintiff,

v.                                                           Case No: 8:13-cv-846-T-27MAP

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** is the Report and Recommendation from the Magistrate Judge recommending that the decision of the Commissioner of the United States Social Security Administration be affirmed (Dkt. 17). Plaintiff filed an objection (Dkt. 18). Upon consideration, the Report and Recommendation is adopted.

A district court may accept, reject or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). In the absence of specific objections, there is no requirement that factual findings be reviewed *de novo*, and the court may accept, reject or modify, in whole or in part, the findings and recommendations. § 636(b)(1)(C); *Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993). Legal conclusions are reviewed *de novo*, even in the absence of an objection. *See LeCroy v. McNeil*, 397 Fed. App'x. 554, 556 (11th Cir. 2010) (citing *United States v. Warren*, 687 F.2d 347, 348 (11th Cir. 1982)); *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

Plaintiff first objects that the ALJ failed to properly weigh the evidence, specifically the

reports from treating physician Levenberg and examining physician DiDio. The Magistrate Judge found that although the ALJ considered the opinions of Dr. Levenberg and Dr. DiDio, she assigned them only limited weight concluding that they are "more restrictive than the evidence of record suggests." (Dkt. 17 at 6 *quoting* Dkt. 9-2 at 27). Rather, the ALJ gave great weight to the opinions of Plaintiff's treating pain physician, Dr. Mozzetti, and a state medical consultant, both of whom placed restrictions on Plaintiff, but not to the extent of Drs. Levenberg and DiDio (Dkt. 9-2 at 27).

Generally, the ALJ must afford the opinion of an examining physician considerable weight. *Marbury v. Sullivan*, 957 F.2d 837, 840 (11th Cir. 1992). A treating physician's opinion may be rejected, however, for good cause. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1241.

Dr. Levenberg's notes from August 5, 2008 and October 2, 2008 do not mention any back pain (Dkt. 9-7 at 65, 67). On October 29, 2009, Dr. Levenberg noted that Plaintiff complained of a "recent flare of acute back pain" for which he went to the emergency room over the weekend, and prescribed him Lortab, Ibuprofen, Diazepam and Levoxyl. *Id.* at 66, 77-78. The ALJ noted that Dr. Levenberg's notes after October of 2009 included "[Plaintiff's] subjective complaints, but no record of physical examination or observations" to support them (Dkt. 9-2 at 26). Dr. Levenberg wrote a letter dated December 11, 2009 detailing Plaintiff's past history of low back pain due to his job injury in 2003 and subsequent surgery in 2004, mentioning that an MRI "showed a large herniated disk on the right at L5 S1 level," and that neurosurgeon had recommended another surgery that Plaintiff had been unable to afford (Dkt. 9-7 at 72). In the letter Dr. Levenberg concluded that

2

Plaintiff "continue[d] to have low back pain despite treatment with multiple oral medications and [wa]s presently unable to work on a regular basis." *Id.* Dr. Levenberg did not delineate how often Plaintiff could work nor what his limitations were, however.

Plaintiff visited Dr. Levenberg on May 3, 2010 complaining of low back pain, but the physical examination does not list a finding regarding his back (Dkt. 9-8 at 61-62). Dr. Levenberg diagnosed Plaintiff with hypothyroidism, chronic back pain, diabetes and hyperlipidemia, recommended a "healthy diet and activity," daily aspirin and prescribed Levoxyl, Diazepam, and Hydrocodone. *Id.* On February 23, 2011, Dr. Levenberg saw Plaintiff due to back pain, yet the physical examination again does not make a finding specifically regarding the back, only notes about examination of the head, eyes, ears, nose, throat, neck, heart, lungs, extremities, neuro, and reflexes. *Id.* at 56-57. Dr. Levenberg mentioned that Plaintiff was complaining of "lower back and bilateral leg pain" with "intermittent numbness of the left leg," and "[r]equest[ed] increase in strength [of] the pain medication." *Id.* Dr. Levenberg's assessment lists low back pain, hypothyroidism, and mild diabetes, and his plan was for Plaintiff to continue the medication with an increase to dosage of Lortab. *Id.* The medical records for these five visits from August 5, 2008 to February 23, 2011 (Dkt. 9-7 at 65-67, 69, 77-78 & Dkt. 9-8 at 56-57, 61-62) do not support Dr. Levenberg's disability assessment of Plaintiff as detailed in the Questionnaire (Dkt. 9-8 at 23-30).

On the other hand, Dr. Mozzetti treated Plaintiff on eight occasions from November 30, 2010 to April 8, 2011 (Dkt. 9-8 at 31-39, 44-48). Moreover, Dr. Mozzetti's examination notes, as cited by the ALJ, make detailed findings as to Plaintiff's back such as his

> gait and station were midposition without abnormalities, muscle strength was 5/5, thoracic and lumbar range of motion were normal, with full flexion, extension and side bending. Inspection and palpation of bones, joints, and muscles was unremarkable. His

3

> coordination was good, sensation was normal, and reflexes were 2/4, with the exception of the bilateral Achilles reflexes, which were 1/4.

(Dkt. 9-2 at 26 *citing* Dkt. 9-8 at 31-32). The ALJ also remarked that Dr. Mozzetti's "[p]hysical examination findings remained constant through [Plaintiff's] most recent office visit on April 8, 2011." (Dkt. 9-2 at 26; Dkt. 9-8 at 31-39, 44-48). The ALJ pointed out that Plaintiff originally complained of pain at a 10 level in a scale from 1 to 10, but on subsequent visits pain was only 4.5 to 5. *Id.*

For example, Dr. Mozzetti's most recent treatment notes from April 8, 2011 state that Plaintiff was "experiencing lumbosacral pain, back stiffness, paravertebral muscle spasms, radicular pain in left leg" and mention that Plaintiff "would be a good candidate for VAX-D therapy for his back" (Dkt. 9-8 at 31). The severity of Plaintiff's condition is listed as a 5 out of 10 down from 10 out of 10. *Id.* Dr. Mozzetti asserts that Plaintiff "is a pleasant, 47 year old male in no apparent distress who looks his given age, is well-developed and nourished with good attention to hygiene and body habitus." *Id.* Dr. Mozzetti's examination of Plaintiff's back states there's good muscle strength, no abnormalities to gait, "Thoracic ROM within normal limits, Lumbar ROM is normal, with full flexion/extension and side bending," and his stability is normal. *Id.* at 32. Dr. Mozzetti diagnosed Plaintiff with

> Acute Lumbago and Chronic Lumbago. Acute Sciatica bilaterally. Displacement of lumbar intervertebral disc [without] myelopathy. Degeneration of lumbar or lumbosacral intervertebral disc. Intervertebral disc disorder [with] myelopathy, lumbar region. Postlaminectomy syndrome of lumbar region. Other and unspecified disc disorder of lumbar region. Acute Sciatica, left[; and] Acute Lumbago, B/L.

*Id.* Dr. Mozzetti ordered physical therapy consisting of "VAX-D therapy, moist heat, 30 minutes, four times a day, therapeutic aquatic exercises, LLLT with therapeutic manipulation & neuro

muscular re-education with photonic stimulation, [and] cold packs, 30 minutes, 4 times a day." *Id.* Dr. Mozzetti discontinued Plaintiff's prescriptions of Lortab and Soma, and continued those for Oxycodone and Xanax. *Id.* at 31-32.

Plaintiff argues that Dr. Mozzetti "never expressed an opinion on the critical question of how long [Plaintiff] can sit, stand, or walk in an 8-hour workday." (Dkt. 18 at 2). But as the Magistrate noted, the record demonstrates that Dr. Mozzetti did place exertion restrictions on Plaintiff's workday, opining that "he should wear a high quality back brace while working, 10 lb lifting restriction frequently (using both hands together), [a]void bending at the waist . . . and 20 lb lifting restriction occasionally (using both hands together)." (Dkt. 9-8 at 31). The ALJ noted these restrictions in her determination (Dkt. 9-2 at 27). Dr. Mozzetti made detailed findings regarding Plaintiff's back condition and gave him a favorable prognosis if he continued treatment as recommended. It is a logical inference that Plaintiff did not have restrictions as to sitting, standing and walking when Dr. Mozzetti specifically listed restrictions only to bending at the waist and lifting specific weights "while working." (Dkt. 9-8 at 31).

As to Plaintiff's argument that the ALJ erred in giving the state agency consultant's assessment great weight, the ALJ listed the consultant's findings stating they were "consistent with the evidence of record" and accorded it "great weight." *Id.* There is no error because the consultant's findings mirrored those of Dr. Mozzetti, Plaintiff's treating physician, as noted by the ALJ. *Id.*; *Kemp v. Astrue*, 308 Fed. App'x 423, 427 (11th Cir. 2009) (*citing Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158, 1160 (11th Cir. 2004)) ("ALJ did not err in relying on consulting physician's opinion where it was consistent with medical evidence and findings of the examining physician.")

As for Plaintiff's first objection, it is apparent that good cause for not according substantial or considerable weight to Dr. Levenberg's opinions existed. First, there are the conflicting opinions of Dr. Mozzetti. Second, Dr. Levenberg's impairment questionnaire dated February 23, 2011 (Dkt. 9-8 at 23-30) included restrictions that were not supported by his own treatment notes (Dkt. 9-7 at 65-67, 69, 72, 77-78 & Dkt. 9-8 at 56-57, 61-62). Lastly, Dr. Levenberg's restrictions were not bolstered by the evidence as were Dr. Mozzetti's opinions, which bore directly on Plaintiff's back problems and the extent of pain he was experiencing. This supported a finding contrary to Dr. Levenberg's. The ALJ articulated these reasons in her decision to give only limited weight to Dr. Levenberg's disability assessment (Dkt. 9-2 at 26-27).

With respect to Dr. DiDio's retrospective diagnosis and opinions (Dkt. 9-8 at 66-82), the ALJ did not err in according limited weight to those opinions, because those opinions were inconsistent with those of treating physician Mozzetti. *See Shaw v. Astrue,* 392 Fed. App'x. 684, 686 (11th Cir. 2010) (more weight is generally given to a treating physician than an examining physician); *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (rule that treating physician's report entitled to more weight inapplicable to opinion of physician who saw claimant only one time). And a retrospective (post-insured-date) diagnosis by a physician that a claimant suffered a disabling condition prior to the insured date must be consistent with pre-insured-date medical evidence. *Mason v. Comm'r of Soc. Sec.,* 430 Fed. App'x. 830, 832 (11th Cir. 2011). As Plaintiff admits, Dr. DiDio was not a treating physician, having examined Plaintiff once on September 7, 2011, after Plaintiff's date of last insured (Dkt. 18 at 7).

In sum, the record demonstrates that the ALJ properly fulfilled her function of resolving conflicts between the opinions of Plaintiff's treating physicians. *See Estes v. Barnhart,* 275 F.3d

722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'") The ALJ articulated reasons for according limited weight to Drs. Levenberg and DiDio, applied the correct principles of law, and gave appropriate weight to the medical evidence.

Plaintiff next objects that the ALJ failed to properly evaluate Plaintiff's credibility. If an ALJ decides not to credit a claimant's subjective testimony, "he must articulate explicit and adequate reasons for doing so." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 2011). The reasons must be supported by substantial evidence and "take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir.1986). The Magistrate Judge detailed the ALJ's consideration of Plaintiff's testimony regarding his subjective complaints, his aversion to obtaining surgery again, his failure to undergo physical therapy since 2009 despite Dr. Mozzetti prescribing it, and his drug-seeking behavior as substantial evidence to discount his credibility (Dkt. 17 at 10-12). Plaintiff claims that the Magistrate Judge erred in concluding that the ALJ properly evaluated Plaintiff's credibility based on Plaintiff's decision not to have surgery and his drug-seeking behavior because the ALJ did not find that Plaintiff exhibited this behavior.

The ALJ discussed thoroughly Plaintiff's drug-seeking behavior noting his visits to the emergency room despite already being prescribed pain medication by both Dr. Levenberg and Dr. Mozzetti at the time (Dkt. 9-2 at 25). The ALJ remarked that Plaintiff was prescribed Hydrocodone, Lortab, and Diazepam by Dr. Levenberg, as well as Oxycodone, Motrin and Xanax by Dr. Mozzetti. *Id.* She concluded that "[b]ased on a review of the records, it appears that [Plaintiff] was obtaining prescription pain medications from two different sources simultaneously, and a third source at the time of his emergency room visit." *Id.* The ALJ was referring to the emergency room records visits

where Plaintiff complained of back pain on October 16, 2009 (Dkt. 9-8 at 11-13, 49-51), October 28, 2009 (*Id.* at 8-10, 52-55), and January 10, 2011 (*Id.* at 40-42), which all mention that he obtained medications such as Dilaudid, Toradol, Flexeril, Percocet and Naprosyn. On January 10, 2011, while treating with both Dr. Levenberg and Dr. Mozzetti, Plaintiff told his ER doctor that the medications he was taking were not working, and led him to believe that they were over-the-counter medication. *Id.* at 40. Substantial evidence of Plaintiff's drug-seeking behavior supported the ALJ's adverse credibility assessment (Dkt. 9-2 at 25). *Mason v. Comm'r of Soc. Sec.*, 430 Fed. App'x. 830, 834, (11th Cir. 2011) (substantial evidence supported ALJ's adverse credibility finding since the medical evidence showed that claimant engaged in significant physical activity).

After conducting a careful and complete review of the findings, conclusions, recommendations, and objections and giving *de novo review* to matters of law, the Court accepts the factual findings and legal conclusions of the Magistrate Judge and adopts his recommendation.

Accordingly,

1. The Report and Recommendation (Dkt. 17) is **APPROVED** and **ADOPTED** as the opinion of the Court for all purposes, including for appellate review.

2. The decision of the Commissioner is **AFFIRMED**.

3. The Clerk shall enter final judgment in favor of the Commissioner of Social Security and against Plaintiff Timothy Cromwell.

4. The Clerk is directed to **CLOSE** the file.

**DONE AND ORDERED** this 31st day of July, 2014.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of record